Case No. 21-5250, Chava Rachel Mark, Individually, in a transparent and natural bargain of CDM, RLM, and EDM minors, et al., of balance, v. Republic of the Sudan and United States. Mr. Perlin, 38 balance. Mr. Kern, 38 balance. Ms. Carson, 38 balance. Morning, counsel. Mr. Perlin, please proceed when you're ready. Your Honor, may it please the Court. Mark's family has said from the beginning of the case, the outset, that they do not challenge the government's authority to settle claims, but they challenge the government's authority to do so in an unconstitutional settlement. That's what this case is about. It involves an unprecedented settlement agreement entered into between the United States government and Sudan, in which certain claimants were compensated, provided—were allowed to continue their cases, or both, and only the Marks and a small group of similarly situated claimants were denied any benefits of the settlement agreement. They lost their claims. The claims were espoused and settled for the benefit of the other parties. We haven't seen—I haven't seen any precedence of the settlement that goes—where the benefits are distributed so inequitably. Mr. Perlin, in understanding your argument, your equal protection argument, are—you know, is your—are you making the argument that the jurisdiction stripping here violates equal protection as well as the substance of the claims settlement violates equal protection? Because I see those as two distinct claims. They're two claims, but the crux of the jurisdiction stripping claim is that it was done in a way that violates equal protection. Right, so— The Antelope case— Well, there are two ways in which the jurisdiction stripping provisions can be unconstitutional. One is based on access to court, and one is based on the disparate treatment of certain claimants versus others. The 9-11 claimants were given leave to continue their cases, and they were compensated under the settlement agreement. But that—that just goes to confirm, I think, what the premise of Judge Rouse's question is, which is that in order to go forward in any way with this case, we'd have to first conclude by our own argument that the jurisdiction stripping provision is invalid, because if it's not, then we lack jurisdiction. I'm not sure what happened here was—what happened first was that the executive branch entered into the claim settlement agreement with Sedan, and in that agreement, they espoused and settled all claims. The jurisdiction stripping provision is more forward-looking. I mean, the claims of these—of the claimants with any pending case were terminated with the espousing. Jurisdiction stripping claims provisions are, you know, as the pending cases is piling on and as the future cases, I think that's what the—I was—Congress is looking to future cases by stripping jurisdiction and terminating the cause of action, the statute for the cause of action. It also applies to the pending cases. But I think the first step here was that the government espoused and settled all cases. Right, but for our purposes, that was the first step chronologically for purposes of what happened to your claims. But for our purposes in addressing what we can do with your challenge on appeal, don't we first have to decide whether we have jurisdiction? And the only way in which we don't have jurisdiction, because the statute purports to reconstitute Sudan's sovereign immunity. Right, and for us to be able to address your claims at all, we have to conclude that that was invalid. Otherwise, we lack jurisdiction. Okay, so let me address that, because the jurisdiction stripping provisions are invalid for a very fundamental reason, under equal protection. And the—it's important to keep in mind the background of the FSIA. Before the FSIA was enacted, the executive branch would settle cases ad hoc. There were no standards governing what cases were—I'm sorry, the government would allow, would grant, or waive immunity on an ad hoc basis. There were no standards determining which cases were allowed to proceed and which cases were not allowed to proceed. It was just a suggestion by the government, this one can go, and the courts would defer, and these ones can't. There were no standards. Congress enacted the FSIA to set firm standards so that all U.S. nationals would be treated equally in their claims against foreign states. The Supreme Court characterized the before and after, the FSIA has said that with the FSIA, the Congress abated the bedlam. And it was arbitrary and capricious which cases were allowed to proceed and which were not. This settlement agreement is a throwback to the pre-FSIA standards, which didn't— But the pre-FSIA world didn't violate the Constitution. Correct. It didn't— So, if bedlam was not unconstitutional, and the executive could act in perhaps arbitrary ways in deciding when they were going to suggest immunity was going to be waived or not for foreign sovereigns, and Congress provided some standards with the FSIA, how is it unconstitutional for Congress to change the standards, even if they change them in some way that goes back to some degree to the bedlam that we had before? Your Honor, bedlam was not per se unconstitutional, but bedlam could be unconstitutional as applied. And that's what happened—that's what's happening in this settlement agreement. They've thrown—the government threw away all standards determining that there should be some standard basis for determining when—which claims can proceed and which claims can't. And they did it within one case where all of the—within one scenario where all of the claimants are similarly situated, they're all U.S. nationals, there's terrorism claims against Sudan, and the government said, you and you and you and everybody can get paid or maintain their claims or both, but these plaintiffs cannot. We're going to trade in their claims for no benefits, but to the advantage of all the other claimants. Mr. Perlin, do you agree that the equal protection standard here is a rational basis? I think it has to be heightened. The reply brief discovered—unfortunately, I didn't discover it earlier, but I was in the motion to extend the time, it was in the reply brief—that the reasons, the rationale offered by Sudan and the government was patently false. The primary basis for the district court's decision was that all of the claimants who were compensated had either obtained a default judgment or were the beneficiaries of a private settlement agreement with Sudan. Sudan went so far to say that the U.S. government had no part, there was no government action, governmental action in these private settlement agreements. But Sudan cited a press release that says the government did have a role in the private settlement agreements. What that does, the disingenuity of the proper rationale for the distinctions, I think it throws into doubt every rationale offered, because if they had a valid reason to distinguish, it wouldn't make up the reasons that defy the fact. Is that an argument that the government's reasons don't pass rational basis review, or are you arguing that the bad faith of the government or misrepresentation somehow requires to impose a heightened standard? It requires a heightened standard of review because there's no basis to evaluate the rationality of the decision when the police are offering deceptive rationale. Meaning, if there was a good reason for the distinction, it wouldn't be forced to offer false, blatantly false reasons that are demonstrably false. There were no private settlement agreements. These were agreements that predated the signing of the claim settlement agreement. They were orchestrated by the U.S. government. And, I mean, look at it this way. There was one group of plaintiffs, the Tate plaintiffs, came in 20 years after the coal attack and filed their action, filed their claim. They were represented by a very well-connected law firm, and they filed it a few months before the Marks did, filed their claim just a few months before the Marks filed their claim. The government claims and the Sudan claims and this report found that the Marks came in at the 11th hour, were being opportunistic. Nobody said, you know, maybe the Tate plaintiffs are being opportunistic or the law firms are being opportunistic, but they were the ones who orchestrated the private settlement agreements of the U.S. government. I think that it requires scrutiny. It requires a closer look because of the deception. I was, I requested a few minutes. We'll give you a little bit of time. Okay, thank you. Thank you, counsel. Mr. Curran. This is the court, Christopher Curran of White and Case, on behalf of the Republic of the Sudan. This morning, I'm accompanied by, among others, the Sudanese ambassador to the United States. In the gallery, Ambassador Idris presented his credentials to President Biden earlier this month. The ambassador's counterpart, U.S. Ambassador John Godfrey, has arrived in Khartoum, where he has presented his credentials. He's the first U.S. ambassador to Sudan in over a quarter of a century. This historic normalization between two nations that were formerly contentious was made possible only by the claimed settlement agreement and the statute that's at issue in this action. Sudan, and I think everyone, has great sympathy for the horrible incident that, the tragedy that befell the Marks family. But the district court was correct to dismiss the action against Sudan. Under the Supreme Court decision in Rurgas, the district court had some optionality as to how it would address the claims. And the choice was between addressing the subject matter jurisdiction argument that hinged on a constitutional challenge or the political question document. And the district court went primarily on the subject matter jurisdiction and constitutionality argument, but also tipped its hat to the political question document. This court, I suggest, has the same optionality under Rurgas in choosing how to affirm the dismissal below. As to the constitutionality point... Do you think we do have that optionality? I mean, we have before us, I mean, both parties agree that there is a statute that strips us of subject matter jurisdiction in this case. So don't we first have to decide that as a threshold issue about whether that jurisdiction stripping provision is constitutional? So in some cases, we have the option to choose one jurisdictional round over another. But where there is a statute explicitly divesting us of jurisdiction, don't we have to address that first? I understand the question. First of all, there's no question this court has appellate jurisdiction under 1292-1, 1292, 1291. As to the district court's subject matter jurisdiction, yes, ordinarily, it is incumbent upon a district court to address subject matter jurisdiction at the outset. But I think Rurgas, in clarifying the Steele Co. decision, was quite explicit in saying that when a district court has various threshold options to dismiss an action, it may choose among those threshold options. Just as this court did prior to Rurgas, and in a case cited in Rurgas, the Papandreou decision, where this court concluded that it could dismiss an action on form non-convenience before determining, or it concluded that a district court could dismiss an action on form non-convenience before addressing subject matter jurisdiction. So there are circumstances in which a court is excused from making a definitive ruling on subject matter jurisdiction when there is another, perhaps easier, threshold basis for dismissal. Is it your contention that political question is an easier grounds for affirmance? Sudan doesn't take a position on which is easier. We're agnostic as to which approach this court takes. We think it's clear under both arguments. We think that the constitutionality is clear here because it is a rational basis standard. And we think that there are, we easily pass that for a variety of reasons. And we also think that under existing precedent, the political question doctrine would also be a viable way to affirm the dismissal. And for that, I cite not only the federal circuit decisions in Aviation and in Belt, which were pretty close to on point to our scenario here, but also the more recent Supreme Court decision in Rucho, which found that it was appropriate not to address equal protection claims on the basis of political question. So whether this court is inclined to go with the constitutionality route, as the district court did, or political question, we have no position on that. We think either is a viable basis for affirmance. You haven't made any argument to the effect that if on the first route, that it's inappropriate to entertain a constitutional challenge to a jurisdiction stripping provision. Your argument all along has been, oh sure, there's such thing as an equal protection challenge to this, it just fails because it survives, because the statute survives rational basis. That's correct. This is an unusual case in that the subject matter jurisdiction issue turns on a constitutional issue. Right, because of the nature of the challenge. But you've never suggested that there's some impropriety in entertaining that constitutional challenge to the subject matter jurisdiction stripping provision. You've bought into that. Your point has been, and the district court accepted it, that the equal protection challenge lacks merit because there is a rational basis for the lines that Congress drew in the statute. That's right, and I fall back to Rourke's on that point. I do think that a district court has an option as to choose between those fragile grounds. You know, it's not clear to me exactly what the district court did here, because I mean, the district court seems to address the substantive merits of the equal protection challenge to the statute. And then after that, saying that the statute, in the way it allocates claims, doesn't violate equal protection, then finds, you know, then turns to subject matter jurisdiction. Or then turns to political question doctrine, the way I read the opinion. I mean, do you agree that the plaintiffs here have, or the appellants, have basically two separate equal protection challenges? One is an equal protection challenge to the jurisdiction stripping, and another is the equal protection challenge to the way the claims have been settled specifically? I don't know. I don't know that I understand the plaintiff's argument to that extent. Certainly the latter. They're certainly claiming that they've been mistreated in the claim settlement agreement and in the implementing statute. And I think the district court addressed that. I'm not sure that we can reach the substantive equal protection challenge to the statute before we reach the equal protection challenge to the jurisdiction stripping provision of the statute. I'm not sure any of our cases permit that ordering. I reburg us as permitting that. Because as before determining we have subject matter jurisdiction at all, deciding whether a statute is constitutional. How does the constitutional issue is embedded in the subject matter jurisdiction issue here? Because... Wait, which statute are we talking about? The equal protection challenge to which statute? Well, it's to the stripping, it's to the amendments to the Foreign Sovereign Immunities Act, right? That's what the implementing statute here did. It amended the FSIA. And the FSIA, of course, is the sole basis for jurisdiction over foreign states in all courts in the United States, federal and state. So here, the challenge, the constitutional challenge was that the statute amending the FSIA was invalid due to unconstitutionality. So the equal protection argument is inherently or inextricably entwined in the subject matter jurisdiction question. It's not just inextricably intertwined, it is a challenge. Because if the subject matter jurisdiction stripping statute is valid, the case is over. Because we lack jurisdiction. So there must be some basis for saying the reinstatement of Sudan's sovereign immunity is invalid. Because if it's not invalid, we lack jurisdiction. And I take it the way this case arises is there's a challenge that's being made that says actually it is valid. And the reason it's invalid is because there's an equal protection problem. Because it's the only way that Sudan's sovereign immunity got reinstated is by drawing lines in the reinstatement of sovereign immunity that don't pass muster under the equal protection clause. But am I misunderstanding? No, that's how I understand the plaintiff's argument. Yeah, that the jurisdiction stripping statute, the Sudan Claims Resolution Act, is unconstitutional and therefore fails, in effect, to amend the FSIA. And therefore, Sudan still lacks sovereign immunity. Therefore, the case can go forward. That's their argument. Because the implementing statute eliminated 1605 capital A, which was the sole basis for subject matter jurisdiction over these claims. Any further questions? Okay, thank you. Thank you, Mr. Kern. Ms. Carson. Good morning. May it please the court. Sonia Carson for the United States. Chief Judge Srinivasan, Judge Rao, our understanding of the case is the same as I think the colloquy with both counsel before me have suggested. We think that the question before the court first is whether or not the jurisdiction stripping provision of the Sudan Claims Resolution Act is constitutional. I understand the plaintiff's argument under rational basis review, their version of rational basis review, to be that because Congress said in the statute that civil claims are an important means of deterring terrorism, that Congress cannot exclude from the restored sovereign immunity the claims of the 9-11 plaintiffs without unjustly disadvantaging or singling out these plaintiffs. And there are a number of problems with that argument. The first one, of course, is that rational basis review is not APA review. We do not hold up the text of a government action and ask whether the government has articulated reasons that could support the best understanding or the most perfect implementation of those objectives. We ask whether or not there is any conceivable basis to conclude that the decision reflects rational policy rather than arbitrary action. And here there are any number of distinctions between these plaintiffs and the plaintiffs who were injured in the 9-11 attacks. And it seems that the government's position is that is a more straightforward ground than the political question doctrine. Yes. Yes, Your Honor, that's correct. Can you say a little bit more about that? So by deciding the distinct constitutional question, whether or not this court has lax jurisdiction because Sudan's sovereign immunity has been validly restored, we are applying ordinary judicially administrable principles of constitutional interpretation and protection clause. And here, of course, the plaintiffs have not been singled out. It's not simply Marx who are excluded from continuing to pursue their claims against Sudan in U.S. federal courts. It's anyone with any claim against Sudan, filed or not, that preceded their restoration of Sudan's sovereign immunity. Could you lower the mic just a little bit or lower the podium? I have a little trouble picking up your voice. I apologize. Thank you. That's much better. Can I ask a follow up to that? As I understand your brief, you're actually not taking a position on what ultimately taking a position on whether there is a non-justiciable political question here. So I think it's implicit from our brief that in requesting affirmance on the jurisdictional basis, we think that that question does not present a justiciability issue under the political question doctrine. And so you think that you don't think there is a political question bar? These plaintiffs' particular claims in the context of this case are correct. We do not think that the political question bars this court from affirming the district court's judgment that there is no jurisdiction here because Congress validly reinstated Sudan's sovereign immunity and that the carve out for the 9-11 plaintiffs does not pose any constitutional impediment to that action. And there's no political question bar to us looking at that issue? In this case, on the basis of the claims the plaintiffs have brought, no, there is no bar. Of course, our brief goes on to explain that if the case were to go further, if the court's analysis were to go further than affirming on the jurisdictional dismissal, then we do potentially get into quite complex and difficult political questions. However, as I think the colloquy between the counsel before me has I think showed, there's no need for this court to go so far in this case. What we have is a very straightforward delineation between plaintiffs who filed their claims on the eve of the government action that's challenged here versus claimants who have been in court, some for more than a decade. We have plaintiffs who were injured abroad versus plaintiffs who were injured on U.S. soil. These are all the sort of entirely rational bases on which Congress can choose to make claims. They don't have to go beyond those designated as state sponsors of terrorism who are immune from suit in U.S. court. Thank you. Thank you, counsel. Mr. Perlman, we'll give you two minutes for rebuttal. I'll address the vesting jurisdiction issue first. That seems to be where the court is focused. I think the antilock decision, I don't have the citation handy. That case demonstrates that there was a dissent by then Chief Judge Wald saying that if the case involves some racial distinction where those cases, the claims by a racial minority were espoused, the settlement agreement would be, the agreement would have been invalid. The majority decision said it's true that if there were a constitutional law in the resolution of those claims, we would be very concerned. Sorry, let me back up. Then the court, the jurisdiction of the court was stripped. Claims were, the jurisdiction of the court to bring certain claims was stripped and the plaintiffs challenged that. They were non-Americans and the court, both the dissent made the argument and the court acknowledged that constitutional challenges to jurisdiction stripping are hurt, must be required of the court's attention. The, I don't remember the exact language, but that was both in the dissent and in the majority opinion. Let me just say this. I agree with Mr. Kieran that equal protection is embedded in the challenge of jurisdiction stripping and that compels a heightened scrutiny because when a constitutional right is deprived, the level of scrutiny is heightened. It's no longer a normal, rational-based view. And is that constitutional right, in your view, the access to courts? Several things, access to courts, and it's also being treated similarly to the other American claimants under the settlement agreement. That's the equal protection claim. There are several manifestations of disparate treatment and the access to courts is only one of them. But again, there's never been a settlement where some plaintiffs were, American claimants were paid, compensated, received benefits, and others received nothing. The one last point I want to make is that neither Sudan or the government has addressed the private settlement agreements. And now they're stressing the other bases offered to justify the distinction. Those bases really held water. It wouldn't have had to make up to hide the private settlement agreements, which were not private. It wouldn't have had to deny falsely that the government was involved in those private settlement agreements. And so I think that throws into question every rationale offered for the disparate treatment. Thank you, counsel. Thank you to all counsel. We'll take this case under submission. Thank you.
judges: Srinivasan, Wilkins, Rao